IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Willie Lewis Johnson, #80190A, ) | |
| ) | Civil Action No. 6:04-21809-TLW-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Officer NFN Sullivan; Sheriff Bruce ) | |
| Bryant; Sgt. NFN Guidry; and ) | |
| Officer NFN Gregory, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a former pretrial detainee proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on the defendants' motion for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint on August 2, 2004, alleging that the defendants violated his constitutional rights. On January 20, 2005, the defendants filed a motion for summary judgment. By order filed on January 20, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff received an extension allowing him until May 12, 2005, to respond to the defendants' motion. He filed an untimely response in opposition to the defendants' motion on May 16, 2005.

**FACTUAL BACKGROUND**

This action is premised on the plaintiff's incarceration at the York County Detention Center (YCDC) while awaiting trial on multiple criminal charges. The plaintiff requested that he be placed in protective custody because he believed other inmates at the YCDC were "out to get him" since he had testified against them (Guidry aff. ¶ 3). Pursuant to the plaintiff's request, Sergeant Randy J. Guidry, the classification officer at the YCDC, assigned him to the Segregation Housing Unit where he was separated from the general inmate population but not placed on lock-down status (Guidry aff. ¶ 3).

The plaintiff claims that he was asked to move back to his original housing unit against his desire (compl. 3). According to the defendants, the plaintiff asked to be reassigned to Housing Unit C, a medium security housing unit at the YCDC. Defendant Guidry informed the plaintiff that some of the inmates about whom he previously had been concerned were still in Housing Unit C. The plaintiff told defendant Guidry that he did not have a problem with those inmates. On June 8, 2004, the plaintiff signed a "waiver" acknowledging that he wanted to move to Housing Unit C and that he did not have concerns about other inmates in that unit (Guidry aff. ¶ 4 & ex. 2).

The plaintiff claims that the defendants tried to put him in the same room with an inmate with whom the plaintiff had problems and that he refused to enter the room (compl. 3). According to the defendants, when the plaintiff was transferred to Housing Unit C, the only space available was a room with double bunks. The plaintiff refused to sleep in a room with another man and demanded a private room; he then stated that if his bed did not have a pillow, he "was not doing this" (Guidry aff. ¶ 5; Stacks aff. ¶ 2 and ex. A). The plaintiff did not indicate that he had a concern regarding any inmate in the room or in Housing Unit C (Guidry aff. ¶ 6). In refusing to enter the room, the plaintiff refused a direct order by Detention Center Officer Danny Stacks (Guidry aff. ¶ 5; Stacks aff. ¶ 2). He also cursed at the officers involved with escorting him, was disrespectful to them and threatened them. He also resisted taking off his handcuffs after he refused to enter the room (Guidry aff. ¶ 5; Stacks aff. ¶ 2). As a result of his

2

disorderly and disrespectful conduct, the plaintiff was placed on lockdown in the Segregation Housing Unit for 12 days (Stacks aff. ex. A).

The plaintiff claims that, when he was returned to segregation, defendant Sullivan called him a "black nigger" and told him "you go were (sic) we send you." The plaintiff also claims that two days later the defendants threatened to "beat [him] to death" (compl. 3). The defendants contend that the plaintiff was returned to segregation housing based on his refusal to enter the room and that he never claimed to have a problem with any inmate in Housing Unit C. He was escorted back to the Segregation Housing Unit in Housing Unit A by Detention Officer Bryan Loncaric. He also cursed at Officer Loncaric and refused to allow Officer Loncaric to remove his handcuffs (Guidry aff. ¶¶ 5-6). The defendants deny using racially derogatory language with the plaintiff (Guidry aff. ¶ 9; Sullivan aff. ¶ 4; Gregory aff. ¶ 5; Bryant aff. ¶ 12).

The plaintiff contends that he submitted several letters to defendant Guidry, who refused to acknowledge wrong-doing and "stated you do as we say (boy)." The plaintiff also claims that he wrote a letter to the Sheriff and that defendant Gregory told him he was going to remove the letter from the mail (compl. 3). Defendant Guidry denies telling the plaintiff to "do as we say boy" and denies using such language with inmates (Guidry aff. ¶ 9). Further, the defendants confirm that the plaintiff wrote a letter to Sheriff Bruce Bryant requesting that Chief Jail Administrator John Short investigate the allegations made by the plaintiff in the letter and take appropriate action (Bryant aff.¶ 6). Sheriff Bryant confirmed receiving the letter mailed by the plaintiff (Bryant aff. ¶ 5). Short did investigate the plaintiff's allegations and found them unfounded (Bryant aff. ¶ 6 and ex. A).

## APPLICABLE LAW

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

3

>issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. V. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in her pleadings; rather, she must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiffs position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

4

**ANALYSIS**

*Custody and Security Status*

"The essential elements to be proved in any section 1983 action are (1) that the defendant was acting under color of state law in the actions complained of; and (2) that the defendant deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988) (citing *Briley v. State of California*, 564 F.2d 849, 853 (9th Cir. 1977)). "[A] section 1983 claim can only be sustained by allegations and proof of a violation of the Constitution or statutes of the United States and specifically may not rest solely on a violation of state statutes . . .." *Id.* at 163.

The Due Process Clause of the Fourteenth Amendment provides that no State "shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1.

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

An inmate who is incarcerated subject to a lawful conviction has no liberty interest in being free from placement in segregation because segregation is "within the range of confinement" an inmate should expect to result from conviction. *Id.* at 487. Similarly, to the extent that the plaintiff challenges double-celling of inmates, this claim must fail under these circumstances where other living conditions were constitutionally adequate. *See Plyler v. Evatt*, 846 F.2d 208 (4th Cir. 1988), *cert. denied*, 488 U.S. 897 (1988). Indeed, the plaintiff does not challenge any other aspect of his living conditions. Prisoners, however, have no legitimate expectation of privacy in their cells. *Hudson v. Palmer*, 468 U.S. 517 (1984). Clearly, inmates are not stripped of all their constitutional rights, but lawful incarceration requires withdrawing or limiting many privileges and rights, a retraction justified by the considerations underlying our

penal system. *Id.* at 485. Here, the plaintiff's allegations do not rise to the level of a constitutional deprivation.

### *South Carolina Tort Claims Act*

The South Carolina Tort Claims Act ("Act") provides that the State, its agencies political subdivisions, and other governmental entities are "liable for their torts in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations and exemptions set forth by the Act. S.C. Code §15-78-40. The Act does not create causes of action; rather, it removes the common law bar of sovereign immunity in certain circumstances. *Arthurs ex rel. Estate of Munn v. Aiken County*, 346 S.C. 97, 105 (S.C. 2001). Specifically, the Act provides that

> [t]he governmental entity is not liable for a loss resulting from:
> . . .
> (25)  responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except where the responsibility or duty is exercised in a grossly negligent manner.

S.C. Code Ann. 15-78-60(5), (6), (20) and (25). The South Carolina Supreme Court recently explained, "Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do. It is the failure to exercise slight care. *Jinks v. Richland County*, 355 S.C. 341, 345 (S.C. 2003) (citations omitted).

Here, the plaintiff has presented no evidence of gross negligence by the defendant that would permit liability under the Act. Indeed, he has made no allegation that would support the conclusion that the defendant failed to exercise "even slight care" under the circumstances.

***Exhaustion of Administrative Remedies***

The defendants also argue that the plaintiff's claims should be dismissed based upon the plaintiff's alleged failure to exhaust his administrative remedies as required by Title 42, United States Code, Section 1997e.

The Prison Litigation Reform Act (PLRA) amended 42 U.S.C. §1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Accordingly, before plaintiffs may proceed with their claims in this court, they must first exhaust administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court has held that this section requires an inmate challenging his conditions of confinement to exhaust all administrative remedies before filing an action in district court. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by §1997e(a) is now mandatory").

The evidence in the record reveals that the plaintiff has not completed the administrative remedy process as to his claims in this action (compl. 2). The YCDC has an administrative grievance procedure to handle disputes, but the plaintiff did not file a grievance pursuant to that process (compl. 2). Thus, it appears that the plaintiff did not exhaust his administrative remedies and that his claims should be dismissed on this ground.

***Sheriff Bryant***

The plaintiff has named Sheriff Bruce Bryant as a defendant in this action. He does not allege, however, that Sheriff Bryant was personally involved in or had direct responsibility for the incidents that injured him. Indeed, he makes no allegation against Sheriff Bryant except that he wrote a letter to the Sheriff (compl. 3). By affidavit, Sheriff Bryant has confirmed that he "had no direct participation or involvement in any matter referred to in the Complaint in this action, and I did not directly supervise, participate in or become involved in any

7

aspect of the confinement, discipline or housing assignment of [the plaintiff] while he was confined at" the YCDC (Bryant aff. ¶ 4). Accordingly, the complaint should be dismissed against defendant Bryant.

***Eleventh Amendment Immunity***

When a defendant is sued in an official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the United States Supreme Court analyzed the interplay between §1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.(Citations omitted.)

The Court noted that Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Id*. at 70. The Court held a "[s]tate is not a person within the meaning of § 1983." *Id*. The Court then held that a suit against state officials acting in their official capacities is actually against the state. Thus, officials acting in their official capacity are also not "persons" within the meaning of that term as used in §1983. Accordingly, state officials may only be sued in their individual capacities. Thus, to the extent the plaintiff is suing the defendants in their official capacities, they are entitled to Eleventh Amendment immunity.

***Qualified Immunity***

The defendants have also raised the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right." *Slattery*, 939 F.2d at 216 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)). Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).[1]

In determining whether the specific right allegedly violated was clearly established, tolerance is accorded in the qualified immunity defense to "'good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies. . . [which] is deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Pritchett*, 973 F.2d at 313 (citing *Malley v. Briggs*, 475 U.S. 335, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986)).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

---

[1] In order to shield officials from both the burdens of litigation as well as liability, establishment of qualified immunity is encouraged at the summary judgment stage. *Pritchett*, 973 F.2d at 313 (citing *Harlow,* 457 U.S. 800, 815-819). However, summary judgment remains appropriate "only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as matter of law." *Pritchett*, 973 F.2d at 313 (citations omitted). Thus, it is appropriate to consider the third element of a qualified immunity defense (i.e., whether a reasonable officer would have known that his conduct violated a specific right) only if there are no genuine issues of fact with respect to the official's conduct under the circumstances. If issues of fact do exist, summary judgment is inappropriate, and the issue must be reserved for trial. *Pritchett*, 973 F.2d at 313 (citing *Mitchell*, 472 U.S. at 526).

9

constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 577-78 (4th Cir. 2001) (where court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, to the extent that the plaintiff is suing the defendants in their individual capacities, the defendants are entitled to qualified immunity on these claims.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, it is recommended that the defendants' motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

July 26, 2005

Greenville, South Carolina